IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No.:**

BARBARA SPENCER, and
CRAIG SPENCER, individuals

    Plaintiffs,

v.

ALCHEMY CONCERT SYSTEMS, INC., a Colorado limited liability company

    Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiffs Barbara Spencer and Craig Spencer (collectively, the "Spencers"), by and through legal counsel, Garfield & Hecht, P.C., respectfully state and allege the following for their Complaint against Defendant Alchemy Concert Systems, Inc. ("Defendant"):

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs are individuals who reside in Florida.

2. Defendant is Colorado limited liability company with a principal office address of 2100 Dolores Way, Carbondale, Colorado 81623.

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship and the amount in controversy exceeds $75,000.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

5. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

6. When the Spencers' daughter became engaged to be married, they wanted to host a memorable dream destination wedding celebration at The Little Nell Resort ("The Little Nell") in Aspen, Colorado.

7. The Spencers hired Mindy Weiss ("Weiss"), who is known as one of the top wedding and event planners in the world for clients who are among the world's most notable couples and celebrities, through her company Mindy Weiss Party Consultants, Inc. ("MWPC") to plan the wedding.

8. Unfortunately, the memorable dream wedding envisioned by the Spencers turned into a horrific wedding nightmare costing over Two Million Dollars ($2,000,000) that the Spencers and their daughter will never forget (for all the wrong reasons).

9. One of the many failures that turned what should have been one of the best days of the Spencers' lives into a day that will go down in infamy was the failure of vendors and suppliers to adequately prepare for the wedding.

10. Defendant in particular was woefully unprepared.

11. Because music is such a critical component of any wedding big or small, the Spencers spared no expense in hiring performers.

12. The Spencers entered into written agreement with West Coast Music ("WCM") to furnish a 13-piece band based in Los Angeles, California, called JB Project to perform at the wedding reception, paying a substantial amount for WCM's services, in addition to travel expenses (the "WCM Agreement").

13. Because JB Project and WCM are based in Los Angeles, and the wedding was to take place in Aspen, the WCM Agreement contained a "Tech Rider" specifying equipment to be

furnished at the venue by another vendor. The Spencers' event planners at MWPC were tasked with securing a local vendor in Colorado to fulfill the Tech Rider under the WCM Agreement.

14. The Spencers are informed and believe, and based thereon allege that in approximately March 2022, just a few weeks before the wedding, MWPC entered into an oral agreement with Defendant for the provision of audio equipment and services, including musical instruments, a PA system, monitors, mixing consoles, microphones, etc. for JB Project pursuant to the Tech Rider in the WCM Agreement (the "Alchemy Agreement").

15. Defendant's provision of equipment and services was for the direct benefit of the Spencers and their daughter. On behalf of the Spencers, MWPC paid Defendant directly for its equipment and services, and since MWPC retained Defendant for the Spencers, the Spencers paid MWPC approximately $80,000 for the equipment and services by Defendant.

16. When WCM and its Sound Engineer arrived to set up for the wedding reception on March 26, 2022, using the equipment and staging provided by Defendant, as soon as JB Project's show file was plugged into the equipment supplied by Defendant, the entire system shut down, and technicians for both WCM and Defendant spent hours trying to solve the problem, ultimately to no avail.

17. The failure of the audio system caused a cascading number of issues that essentially ruined the wedding.

18. Per the schedule created by MWPC and Weiss, the Spencers' guests began assembling at the base of the Aspen Mountain at approximately 5:30 p.m. to ride a gondola to the top of the mountain for the wedding ceremony and reception. However, at Weiss's direction, guests were held at the bottom of the mountain and not permitted to come up on the gondola for over an hour in an effort to conceal the problems with the music from the Spencers and their guests and try to give WCM and Defendant additional time to solve the problem.

19. As a consequence of Weiss holding guests at the bottom of the mountain for over an hour, guests did not start arriving to the top of the mountain for the ceremony until 6:30 p.m., and the ceremony, which was supposed to start at 6:30 p.m. was delayed until 7:00 p.m.

20. After the ceremony ended, guests were meant to enjoy a cocktail hour from 7:00 p.m. until approximately 8:00 p.m., with the bride and groom making their entrance to the reception at 8:20 p.m.

21. However, because of the delayed start time for the ceremony, the fact that WCM and Defendant were still trying to resolve the technical problems with the music, and MWPC/Weiss concealing the problems with the venue, the cocktail hour did not start until 7:35 p.m., and it stretched until after 9:00 p.m., at which time guests were permitted to enter the Sundeck, and the bride and groom did not make their entrance to the reception until approximately 9:15 p.m.

22. It was the Spencers who finally told Weiss at approximately 9:00 p.m. to move guests into the reception. Weiss was still waiting for the music to work and she concealed this fact until she was confronted.

23. When the bride and groom entered the reception, instead of the twelve (13) piece band flown in from Los Angeles to perform for guests, there was no music other than a DJ playing music through a single barely audible speaker, and guests were informed that there were technical problems with the sound equipment.

24. The bride and groom had their first dance to music played by a DJ that had little amplification, due to the failure of Defendant's equipment, and the music was barely audible to the guests.

25. When the guests arrived in the reception room, the members of the band fidgeted around on stage, cursing and looking frustrated, appearing completely unengaged while

4

technicians attempted unsuccessfully to fix the problem, making guests feel awkward and uncomfortable.

26. As a result of the delays from the failure of the music equipment, the dinner service at the reception was at least an hour late, and the food was cold by the time it was served.

27. The service was also rushed due to the late hour, so the entire flow of the event was disrupted and the time between courses was severely condensed.

28. Although the band attempted to play music without proper amplification because the sound equipment was not working, guests could barely hear much of the music that was played.

29. In addition, the band's repertoire was also severely limited as a result of the band's show file either being corrupt or not being compatible with the equipment furnished by Defendant.

30. Although the Spencers hired famed rapper and singer Nelly to perform at the end of the reception, as direct result of all of the delays resulting from the technical equipment failures experienced by WCM and Defendant, the start time for his performance was delayed by nearly an hour, from 11:30 p.m. to 12:20 a.m., and his performance time had to be cut short given time constraints relating to when the gondola that was used to ferry guests back to the bottom of the mountain stopped operating. The music system against went out during Nelly's performance.

31. All in all, most attendees to the Spencers' wedding – including representatives of the Little Nell, WCM, Defendant, and Nelly – agreed that the reception was a complete debacle, some calling it a "total shit-show." This was not the dream wedding that the Spencers expected or bargained for when they hired Weiss/MWPC to plan their event and paid over Two Million Dollars ($2,000,000) for the celebration.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

32. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

2861925.3

33. The Alchemy Agreement represents a valid and enforceable contract.

34. The Spencers are third-party beneficiaries of the Alchemy Agreement and have the right to enforce its terms.

35. Defendant breached the Alchemy Agreement by failing to provide working equipment among other things.

36. As a result of Defendant's breach of the Alchemy Agreement, the Spencers suffered damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)

37. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

38. In the event the Alchemy Agreement, in whole or in part, is deemed to be invalid or unenforceable by the Spencers, for whatever reason, the Spencers alternatively plead the equitable claim of unjust enrichment.

39. Defendant received a benefit at the Spencers' expense in the form of a monetary payment for the provision of equipment and related services.

40. Defendant would be unjustly enriched if it was entitled to retain the monetary benefit despite its failure to provide working equipment.

## THIRD CLAIM FOR RELIEF
### (Negligence)

41. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

42. Defendant owed the Spencers a duty of care to competently perform the services

and provide the equipment for which it was engaged in connection with the wedding.

43. Defendant breached that duty through the conduct described above including the failure to provide working equipment and the failure to adequately troubleshoot the problems with the equipment provided.

44. As a result of Defendant's breach of its duty of care, the Spencers have suffered damages in an amount to be proven at trial.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## RESERVATION OF RIGHTS

Plaintiff expressly reserves all rights accorded under Colorado and federal law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in their favor and against Defendant as follows:

A. Finding that Defendant is liable for breach of contract or, in the alternative, unjust enrichment;

B. Finding that Defendant is liable for negligence;

C. Awarding Plaintiff damages in an amount to be proven at trial;

D. Awarding Plaintiff pre- and post-judgment interest;

E. For any and all such other and further relief as this Court deems just and proper under the circumstances.

DATED July 25, 2023.                    Respectfully submitted,

/s/ Christopher D. Bryan
Christopher D. Bryan
Macklin Henderson
GARFIELD & HECHT, P.C.
625 East Hyman Avenue, Suite 201
Aspen, Colorado 81611
Telephone: (970) 925-1936
cbryan@garfieldhecht.com
mhenderson@garfieldhecht.com
*Attorneys for Plaintiffs*